UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THE DETROIT EDISON COMPANY,
MIDWEST ENERGY RESOURCES
COMPANY, DTE COAL SERVICES,
INC.,

        Plaintiffs,

v.

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

        Defendant.
_____/

Case No. 05-74873

Honorable Patrick J. Duggan


**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO REFER CLAIMS TO ARBITRATION**
**AND**
**DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**
**AND**
**DISMISSING COMPLAINT**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on June 12, 2006.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On December 23, 2005, Plaintiffs filed this action against Defendant BNSF Railway

seeking declaratory relief and damages for their claims of breach of contract, breach of

contract based on custom, breach of implied covenant of good faith and fair dealing, and

promissory estoppel.  Presently before the Court are Defendant's Motion to Stay Court

Proceedings and to Refer Claims to Arbitration and Plaintiffs' Motion for Leave to File

First Amended Complaint. The Court heard oral arguments on these motions on May 4,

2006.

I.    Background

        Plaintiffs Detroit Edison and its corporate affiliates, Midwest Energy Resources

Company, and DTE Coal Services, Inc., use rail services to move coal to industrial coal

consumers and electric generation stations. Plaintiff Detroit Edison and Defendant BNSF

entered into a Coal Transportation Agreement, BNSF-C-12152 (the "Agreement"),

whereby BNSF agreed to transport coal from mines in Wyoming and Montana to the

upper Midwest and for interchange to other rail carriers at Chicago, Illinois.

        In their lawsuit, Plaintiffs allege that Defendant is obligated by the Agreement to

furnish locomotives for the movement of Detroit Edison trains that remain with the coal

trains and "run through"[1] beyond the point where BNSF interchanges the trains with other

rail carriers. (Compl. ¶33). In addition, Plaintiffs contend that BNSF failed to fulfill its

obligations with respect to interchange trains with other rail carriers at Chicago. (Compl.

¶36).

        The Agreement contains the following provision:

        If a question or controversy arises between the parties concerning the observance,
        performance, interpretation, administration or implementation of any of the terms,
        provisions, or conditions contained herein or the rights or obligations of either

---

        [1] "Run through" is an industry term describing the practice of using the same locomotives
from one end of the run to the other end of a run and switching crews at points of interchange
with a receiving rail line, rather than having to physically swap out locomotive power units upon
each territory change over the length of a run.

2

party under this Agreement, such question or controversy shall in the first instance be the subject of a meeting between the parties to negotiate a resolution of such dispute. If, within thirty (30) days after the meeting, the parties have not negotiated a resolution or mutually extended the period of negotiation, either party may seek resolution of the question or controversy pursuant to binding arbitration.

(Def.'s Mot. Ex. 2, redacted Agreement § 9 at 40).

On February 15, 2006, Defendant filed a demand for arbitration to address the following issues: (1) whether the Agreement imposes an obligation upon BNSF to provide run-through locomotive power beyond the Interchange; and (2) the meaning of "Interchange" as defined in the Agreement. (Def.'s Mot. Ex. 3).

On February 23, 2006, Defendant filed its Motion to Stay Court Proceedings and to Refer Claims to Arbitration.

On March 17, 2006, Plaintiffs filed a Response in Opposition to Defendant's Motion and Motion for Leave to Amend Complaint.

II.   Applicable Law and Analysis

    A.   Defendant's Motion to Stay Court Proceedings and to Refer Claims to Arbitration

Defendant moves to refer Plaintiffs' claims to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2 and 3. The FAA requires arbitration if: (1) there is an agreement with a nexus to interstate commerce that contains an arbitration clause, *see* 9 U.S.C. § 2; and (2) the arbitration clause covers the issues raised in the complaint, *see* 9 U.S.C. § 3. Section 4 of the FAA gives the court the authority to issue "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

In adopting the FAA, Congress intended to create "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). Any doubts concerning whether arbitration is required are to be resolved in favor of arbitration. *Id.* at 24-25, 103 S. Ct. at 941. The Sixth Circuit has found:

> When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" . . . . Where the arbitration clause is broad, only an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration by the arbitrators.

*Highlands Wellmount Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (citing *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986)).

Plaintiff argues that the Court should deny Defendant's Motion because the Agreement contains a permissive arbitration clause, which states that the parties "***may*** seek resolution of the question or controversy pursuant to binding arbitration." (Agreement § 9 at 40 (emphasis added)). According to Plaintiff, the use of the word "may" in the arbitration provision merely gives the parties the option of arbitrating the dispute, without foreclosing resolution of the dispute through litigation. The Court disagrees.

A number of courts have found that the word "may" in arbitration provisions does not make arbitration optional. *See Mollett v. City of Taylor*, 197 Mich. App. 328, 339, 494 N.W.2d 832, 837-38 (1992) (finding that a collective bargaining agreement

containing a grievance clause providing that an employee "may" go before the

commission did not give the employee the option to go to court or the commission, but

rather, that the employee could go to the commission "or choose to do nothing at all");

*see also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658-59, 85 S. Ct. 614, 619 (1965)

("Use of the permissive 'may' does not of itself reveal a clear understanding between the

contracting parties that individual employees, unlike either the union or the employer, are

free to avoid the contract procedure and its time limitations in favor of a judicial suit.

Any doubts must be resolved against such an interpretation."); *Allis-Chalmers Corp. v.

Lueck*, 471 U.S. 202, 204 n.1, 105 S. Ct. 1904, 1908 n.1 (1985) ("The use of the

permissive 'may' is not sufficient to overcome the presumption that parties are not free to

avoid the contract's arbitration procedures."); *Nemitz v. Norfolk & W. Ry. Co.*, 436 F.2d

841, 849 (6th Cir. 1971) (finding that an arbitration clause which provided that disputes

"may" be referred to arbitration was mandatory if either party to the agreement invoked

arbitration).

In addition, in analyzing contracts subject to the FAA, two Courts of Appeals have

concluded that use of the word "may" in an arbitration provision gives a party the option

of arbitrating or doing nothing.  *United States v. Bankers Ins. Co.*, 245 F.3d 315, 320-21

(4th Cir. 2001) (finding that the use of "may" in an arbitration provision gave the parties

the option of either arbitrating or abandoning their claim); *Am. Italian Pasta Co. v. Austin

Co.*, 914 F.2d 1103, 1104 (8th Cir. 1990) (same).[2]  The Court agrees that the use of the

---

[2] Plaintiffs cites to one unpublished case from a District of Columbia federal district court
in support of their argument that the word "may" makes the arbitration provision permissive,

word "may" in the Agreement's arbitration provision gives the parties the option of arbitrating or doing nothing.  Therefore, the Court believes that the arbitration provision is mandatory, provided sections 2 and 3 of the FAA are satisfied.

First, in this case, there is clearly an agreement with a nexus to interstate commerce that contains an arbitration clause.  The Agreement governs the transportation of coal in trains across state lines.  Therefore, section 2 of the FAA is satisfied.

Second, the Court believes that the arbitration clause covers all five causes of action raised in Plaintiffs' complaint, and therefore, section 3 of the FAA is satisfied.  Plaintiff's first cause of action is a request for declaratory judgment seeking declarations that (1) the Agreement imposes an obligation on BNSF to provide run-through power, (2) BNSF's service standard in section 5(E)(1) of the Agreement has a particular meaning, and (3) the term "Interchange," in the Agreement has certain meanings.  (Compl. ¶¶32-33, 35-38).  Plaintiff's second cause of action is a breach of contract claim alleging that BNSF breached its Agreement with Plaintiffs.  (Compl. ¶¶39-45).  Both the declaratory judgment and breach of contract claims concern the "interpretation . . . of the terms" of the Agreement and/or "the rights or obligations" of BNSF.  (*See* Agreement § 9 at 40).

---

*Group Hospitalization and Med. Servs. v. Stubbs*, 1990 WL 183576 (D.D.C. Nov. 16, 1990).  In *Stubbs*, the court concluded that "[t]he use of the word 'may' evinces the parties' intent not to be bound to invoke the arbitration machinery to settle their disputes." *Id.* at *2.  The court then found that if the parties had intended to provide for mandatory arbitration of disputes, they could have substituted the word "shall" for "may." *Id.*  The Court is not persuaded by this reasoning.  In this Court's opinion, if the parties had intended the arbitration provision to be permissive, they could have provided "either party may seek resolution of the question or controversy pursuant to binding arbitration *or through litigation*."

Thus, these counts are clearly within the scope of the arbitration provision.[3]

In addition, Plaintiffs' third, fourth, and fifth causes of action are also subject to the arbitration provision. In *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir. 1987), the Second Circuit held that "[i]f the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* at 846 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 625 n.13, 105 S. Ct. 3346, 3353 n.13 (1985)). The Second Circuit found that "the allegations of fraud, unfair competition and unjust enrichment claims were all subject to arbitration because they were predicated on and "not wholly independent of" the contract. *Id.* at 854-56. The Sixth Circuit, following *Genesco*, has found that "[e]ven real torts can be covered by arbitration clauses '[i]f the allegations underlying the claims "touch matters" covered by the [agreement].'" *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). In *Fazio*, the Sixth Circuit found that various fraud claims were within the scope of the arbitration provision because the action could not be maintained without reference to the contract or relationship at issue. *Id.*; *see also Highlands*, 350 F.3d at 576-79 (finding that a fraudulent inducement claim was within the scope of the arbitration provision).

Similarly, although Plaintiffs' claims for breach of contract based on custom, breach of implied covenant of good faith and fair dealing, and promissory estoppel presuppose

---

[3] Plaintiffs do not dispute that Detroit Edison's claims for declaratory judgment and breach of contract are referable to arbitration. However, Plaintiffs argue that the remaining tort claims are not covered by the arbitration agreement.

the absence of an enforceable contract, these claims could not be maintained without reference to the Agreement.  The allegations contained in Plaintiffs' claim for breach of contract based on custom specifically refer to the Agreement: "In the alternative to the aforementioned Breach of Agreement, the Parties entered into a separate contract for run-through power, not inconsistent with the Agreement, based on eight years of assurances, custom, and repeated performance."  (Compl. ¶47).  Moreover, other courts have found that implied contract claims fit within the scope of an existing contract's arbitration provision.  *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 749-51, 756 (S.D. Ohio 2002) (finding that employee's claims arising from termination of employment, including breach of implied contract and promissory estoppel, were covered by an arbitration clause requiring parties to submit to arbitration all claims "arising out of or relating to this [employment] Agreement or the breach thereof"); *Nelson v. Insignia/ESG, Inc.,* 215 F. Supp. 2d 143, 145, 158 (D.D.C. 2002) (finding that employee's claims, including breach of contract claim, were covered by arbitration clause requiring parties to submit to arbitration "[a]ny dispute arising out of or relating to [employment contract or employee's] performance or the Company's performance thereunder, the terms and conditions of . . . employment . . . and/or the termination of such employment").

In addition, in Plaintiffs' breach of implied covenant of good faith and fair dealing, they allege that BNSF breached the covenant "implied in the Agreement by unreasonably limiting its manner of performance under the Agreement where BNSF could find ambiguity, omissions, or areas for deferment in the Agreement."  (Compl. ¶52).  Thus, this cause of action is clearly dependent on the Agreement.

Furthermore, in Plaintiffs' promissory estoppel claim, they contend that BNSF promised: "(1) to provide run-through power on 'new' business, (2) to refrain from demanding assurances from plaintiffs that power will be available at Interchange locations before it is obligated to load 'new' DE or Non-DE business, (3) to perform its obligations in Section 5(E)(1) of the Agreement to transport all Coal Tendered by DE in accordance with the provisions of the Agreement without distinguishing between plaintiffs' 'old' business and 'new' business, and (4) to ship to Interchanges in the Chicago area outside of the Chicago switching district."  (Compl. ¶57).  Plaintiffs also allege that Defendant BNSF breached these four promises in their breach of contract claim.  (Compl. ¶43).  Therefore, the Court believes that Plaintiffs' promissory estoppel claim is within the scope of the Agreement's arbitration provision.  *See also Orcutt*, 199 F. Supp. 2d at 756 (finding that employee's claims arising from termination of employment, including claims for breach of implied contract and promissory estoppel, were covered by an arbitration clause because they were claims "arising out of or relating to this [employment] Agreement or the breach thereof").

Finally, Plaintiffs contend that because Plaintiff Detroit Edison and Defendant BNSF are the only parties bound by the Agreement, Plaintiffs Midwest Energy Resources Company ("MERC") and DTE Coal Services, Inc. ("DTE"), corporate affiliates of Plaintiff Detroit Edison, are not bound by the arbitration provision, citing *Rath v. Managed Health Network, Inc.*, 123 Idaho 30, 31, 844 P.2d 12, 13 (1992) and *Lewis v. CEDU Educational Servs., Inc.*, 135 Idaho 139, 143, 15 P.3d 1147, 1151 (2000).

In *Rath*, the court held that although the Raths were third party beneficiaries to the

9

contract, the express language of the arbitration clause of the contract was limited to "parties" to the agreement. *Rath*, 123 Idaho at 31, 844 P.2d at 13. The court reasoned that to hold otherwise would be "inapposite in the face of the language in the Agreement expressly limiting the arbitration clause to the 'parties' to the Agreement." *Id.*, 844 P.2d at 13.

Similarly, in *Lewis*, the court found that a third party beneficiary is only bound to the extent that terms of the contract apply to him or her. *Lewis*, 135 Idaho at 143, 15 P.3d at 1151. The court held that arbitration provision only applied to the contracting parties, not the third party beneficiaries, because the narrow language of the arbitration provision limited arbitration to "any controversy between the parties" and "of the parties hereto." *Id.*, 15 P.3d at 1151.

In contrast, Defendant argues that the Sixth Circuit recognizes several exceptions to the general rule that only contract signatories are bound by the contract's arbitration provision. *See Javitch v. First Union Securities*, 315 F.3d 619, 629 (6th Cir. 2003) (listing five recognized theories for binding non-signatories to arbitration agreements, including estoppel). According to Defendant, in this case, estoppel applies to bind Plaintiffs MERC and DTE. Under the estoppel exception, a non-signatory receiving a direct benefit under the contract is estopped from arguing that the contract's arbitration provision does not apply to it. *Id.*; *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-18 (4th Cir. 2000) ("In the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's

10

arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.").

Although Plaintiffs contend that MERC and DTE only receive "indirect" benefits (Pls.' Resp. at 12 n.5), Defendant contends that MERC and DTE receive direct benefits under the Agreement and are asserting claims based on those benefits. Under the Agreement, BNSF must deliver coal on behalf of Detroit Edison and its affiliates, including MERC and DTE. Moreover, in their Complaint, Plaintiffs allege that a purpose of the Agreement was to provide a "direct benefit" to MERC and DTE. (Compl. ¶14). Therefore, Plaintiffs MERC and DTE should be estopped from arguing that the arbitration provision in the Agreement does not apply to them.

Furthermore, in *Ripmaster v. Toyoda Gosei, Co., Ltd.*, 824 F. Supp. 116 (E.D. Mich. 1993) (Gadola, J.), the district court held non-signatories to the terms of the contract that they attempted to invoke on the basis of their third-party beneficiary status. *Id.* at 117 (citing *Interpool Ltd. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 635 F. Supp. 1503, 1505 (S.D. Fla. 1985) ("The [third party] beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract.")).

Consequently, the Court believes that third party beneficiaries MERC and DTE, as well as Plaintiff Detroit Edison, are bound by the Agreement's mandatory arbitration provision. Moreover, in this Court's opinion, the arbitration clause covers all five causes of action raised in Plaintiffs' complaint. Accordingly, although Defendant has asked the Court to stay the proceedings, the Court concludes that this matter should be dismissed in accordance with what other courts have done when *all* claims raised by the plaintiff must

11

be submitted to arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

      B.      <u>Plaintiffs' Motion for Leave to Amend Complaint</u>

In an attempt to avoid application of the arbitration provision, Plaintiffs seek leave to amend their Complaint to: (1) add a cause of action for tortious interference against Defendant; and (2) seek additional damages based on Defendant's failure to perform its obligations under the Agreement. Although additional damages based on Defendant's failure to perform its obligations under the agreement would clearly be covered by the arbitration provision, Plaintiffs contend that their allegations of tortious interference would not be referable to arbitration because such a claim would not be covered by the arbitration provision. Specifically, Plaintiffs seek to add a cause of action based on BNSF's alleged tortious interference with Plaintiffs' transportation contract with FirstEnergy.

Plaintiffs seek leave to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which provides, in pertinent part: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given where justice so requires." The Rule was intended to "reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Teft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). To deny a motion to amend the district court

12

must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). In addition, a motion to amend should be denied where the proposed amendment would be futile. *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 613 (6th Cir. 2005).

Although the issue has not been addressed by the Sixth Circuit, other courts have found that where the new or revised claims that a party seeks to add by amendment are subject to a binding arbitration agreement, the proposed amendment is futile. *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985) (affirming lower court's denial of appellant's motion to amend complaint to include federal securities claims where the court concluded that those claims were subject to arbitration); *Adkins v. Labor Ready Inc.*, 205 F.R.D. 460, 465 (S.D. W. Va. 2001) (finding that where claims being added by proposed amendment to the pleading are subject to arbitration, the proposed amendment is futile); *see also Federated Rural Elec. Ins. Co. v. Int'l Ins. Co.*, 1995 WL 405288 (D. Kan. 1995) (denying as moot plaintiff's motion to amend the complaint where the motion was a "direct attempt to avoid application of the arbitration provisions" and the court concluded that the proposed claims would also be subject to arbitration). *But see Schultz v. AT&T Wireless Servs., Inc.*, 2005 U.S. Dist. LEXIS 15770, *5 (N.D. W. Va. Jan. 21, 2005) ("The defendant argues that the plaintiff's motion to amend should not be considered until after this Court decides the defendant's motion to dismiss or, alternatively, motion to stay and compel arbitration. This Court disagrees."); *Mylan Pharms., Inc. v. Kremers Urban Dev.*, 2003 U.S. Dist. LEXIS 20665, *12 (D. Del. Nov. 14, 2003) ("The court furthermore finds it inappropriate to determine the

13

arbitrability of Mylan's claims on a motion to amend."); *Kurschus v. Painewebber, Inc.*, 1996 U.S. Dist. LEXIS 9658, *9 (S.D.N.Y. July 10, 1996) (granting leave to amend before considering and granting motion to compel arbitration).[4]

Because the Court believes that Plaintiffs' tortious interference claim is arbitrable, Plaintiffs' Motion for Leave to Amend must be denied as futile.  Plaintiffs' proposed tortious interference claim in their First Amended Complaint contains the following allegations: (1) that BNSF was obligated to provide additional trainsets to transport coal to FirstEnergy's Lake Plants under the Agreement, but refused to do so when Detroit Edison made the request to BNSF, and (2) that BNSF proceeded to contract directly with FirstEnergy, outside the Agreement, to provide additional trainsets to the Lake Plants. (See First Am. Compl. ¶¶74-75).  Consequently, the Court believes that Plaintiffs' proposed tortious interference claim would "touch" matters covered by the Agreement, and thus, be subject to arbitration.  *See Fazio*, 340 F.3d at 395; *see also Westbrook Intel, LLC v. Westbrook Techs., Inc.*, 17 F. Supp. 2d 681, 685 (E.D. Mich. 1998) (Rosen, J.) (compelling arbitration of tortious interference claim); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (affirming district court's holding that

---

[4] Although these courts decided to address the motion to amend the complaint *before* addressing whether the proposed amended claims should be referred to arbitration, in this case, granting Plaintiffs' Motion for Leave to Amend Complaint and then referring all Plaintiffs' claims to arbitration would serve no useful purpose.  At the hearing, Defendant acknowledged that the arbitration provision encompasses all of the claims Plaintiffs seek to add in their proposed amended complaint.  The Court agrees that Plaintiffs' tortious interference claim would also be covered by the arbitration agreement.

In addition, at the hearing, Defendant acknowledged that even if the Court denied Plaintiffs' Motion to Amend, Plaintiffs would still be able to pursue their tortious interference claim in arbitration.

tortious interference claims were subject to an arbitration provision that covered "all claims and controversies arising from or relating to" the contract); *GATX Management Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1163-64 (D. Colo. 2001) (compelling arbitration of tortious interference claims where contract required arbitration of "disputes aris[ing] out of or related to" the contract).  Therefore, amendment of Plaintiffs' Complaint would be futile.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Refer Claims to Arbitration is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**.

s/Patrick J. Duggan
Patrick J. Duggan
United States District Judge

Dated:  June 12, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 12, 2006, by electronic and/or ordinary mail.

s/Marilyn Orem
Case Manager

15

Copies to:
Eric Rosenthal, Esq.
Thomas Lillard
Mary C. O'Donnell, Esq.